

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2002

# McMurray v. De Vink

Precedential or Non-Precedential:

Docket 1-1346

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"McMurray v. De Vink" (2002). *2002 Decisions.* Paper 2.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/2

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NON-PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-1346


RUSSELL W. MCMURRAY, JR., on behalf of himself and all others
similarly situated

v.

LODWEIJK J.R. DE VINK; ROBERT N. BURT; DONALD C. CLARK; JOHN A.
GEORGES; WILLIAM H. GRAY, III; WILLIAM R. HOWELL; LASALLE D.
LEFFALL, JR.; GEORGE A. LORCH; ALEX J. MANDL; MICHAEL I. SOVERN;
WARNER-LAMBERT CO.; AMERICAN HOME PRODUCTS CORP.

(D. C. N. J. No. 99-cv-05253)

ELLIOT WALSEY, derivatively on behalf of himself and all others
similarly situated

v.

LODEWEIJK J.R. DE VINK; ROBERT N. BURT; DONALD C. CLARK; JOHN A.
GEORGES; WILLIAM H. GRAY, III; WILLIAM R. HOWELL; LASALLE D.
LEFFALL, JR.; GEORGE A. LORCH; ALEX J. MANDL; MICHAEL I. SOVERN;
AMERICAN HOME PRODUCTS CORP.; WARNER LAMBERT CO.

(D. C. N. J. No. 99-cv-5499)

Elliot Walsey and Russell W. McMurray, Jr.,
Appellants


Appeal from the Judgment of the District Court
of the District of New Jersey
District Judge: Hon. Katharine Sweeney Hayden


Argued: November 7, 2001

Before: BECKER, Chief Judge, McKEE and RENDELL, Circuit Judges

(Opinion filed: January 3, 2002)


RICHARD B. BRUALDI, Esq. (Argued)
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515

New York, NY 10006

DAVID J. MANOGUE
SPECTER SPECTER EVANS & MANOGUE, P.C.
Koppers Building, 26th Floor
436 Seventh Avenue
Pittsburgh, PA 15219
Attorneys for Appellants

DENNIS J. BLOCK, Esq. (Argued)
CADWALADER WICKERSHAM & TAFT
100 Maiden Lane
New York, NY 10038

ELIZABETH J. SHER
PITNEY, HARDIN, KIPP & SZUCH
P.O. Box 1945
Morristown, NJ 07962
Attorneys for Appellees

MEMORANDUM OPINION

McKEE, Circuit Judge.
Appellants Russell McMurray, Jr. and Elliot Walsey appeal an order by the District Court for the District of New Jersey staying this diversity action in favor of concurrent litigation that is proceeding in state court in Delaware. Appellants rely upon Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800 (1976) and its progeny in arguing that the district court abused its discretion by entering the stay. For the reasons that follow, we will reverse.

I. Facts

These consolidated actions arise from an aborted takeover battle between Appellees Warner-Lambert Company ("Warner"), and American Home Products Corporation ("AHP"). Warner is a Delaware corporation, with its principal place of business in New Jersey. It manufactures and sells pharmaceuticals world-wide. AHP also manufactures pharmaceutical products, and is also a Delaware corporation with its principal place of business in New Jersey.

On November 4, 1999, Warner announced an agreement to merge with AHP. The merger was valued at approximately $70 billion. The merger agreement valued each share of Warner stock at $83.55. The combined company was to have 20 directors, with ten coming from Warner and ten from AHP. Warner's CEO was to be CEO of the

combined company.  AHP's CEO was to be Chairman for 18 months, and was then to
step aside in favor of Warner's CEO.  The merger agreement also contained a liquidated
damage clause or "break-up fee" that required Warner to pay AHP $2 billion if Warner
terminated the agreement.

The same day the Warner/AHP merger was announced, Pfizer, Inc. another major
manufacturer of pharmaceutical products, disclosed a bid for an "unfriendly" takeover of
Warner.  Pfizer's offer to Warner was for $82.4 billion, and valued Warner stock at
$96.40 per share, or $17.85 more per share than AHP's offer.  Pfizer's offer was
therefore more favorable to Warner shareholders.  Unlike the AHP agreement, however,
the Pfizer offer did not contain a provision for the Warner CEO or Warner directors to
have a position in the company that would have been formed by the merger.

The Warner/AHP merger agreement lead to a flurry of lawsuits, including the one
before us.  Russell McMurray and Elliot Walsey (collectively, "the shareholders") are
shareholders of Warner.  On November 10, 1999, McMurray filed a shareholder class
action on behalf of Warner shareholders in the District Court for the District of New
Jersey against Warner and AHP.  Shortly thereafter, on November 23, 1999, Walsey filed
a corporate derivative suit against Warner and AHP in the same court.  The two
complaints both arise from the merger agreement between Warner and AHP, contain the
same facts and allegations, and rely exclusively upon Delaware law.

The shareholders' complaint alleges that Warner directors initially refused to
pursue serious merger discussions with Pfizer in violation of their fiduciary obligation to
Warner's shareholders.  The alleged breach is based upon their reluctance to pursue
Pfizer's substantially higher offer.  According to the averments, Pfizer attempted merger
discussions with Warner on three previous occasions, but the Warner directors simply
refused to entertain the possibility.   The complaints also claim that Warner breached its
fiduciary duty by agreeing to pay AHP the $2 billion break-up fee.

In addition to the federal suits, other Warner shareholders also began filing suits
against Warner in state court in Delaware.  To date, over 30 shareholder class action suits
are pending in the Delaware courts as well as one derivative action.  The Delaware suits

were consolidated into Rosman v. De Vink, C.A. No. 17519-NC. The Delaware litigation is based upon the same allegations and requests the same relief as the Walsey and McMurray actions.

Warner and AHP filed motions asking the district court to abstain in favor of the litigation in Delaware state court, or in the alternative, to stay the proceedings while the Delaware litigation was pending. The district court refused to abstain, but issued an order "granting a stay and administratively terminating these cases." McMurray and Walsey filed a motion for reconsideration, which the district court denied. This appeal followed.

## II. Discussion
### A. Jurisdiction

Preliminarily, Warner and AHP argue that the district court's stay was not a final order under 28 U.S.C. 1291, and that we therefore have no jurisdiction. However, that issue has already been resolved by the Supreme Court. In Moses H. Cone Memorial Hosp. v Mercury Construction, Corp. 460 U.S. 1 (1983), the district court stayed federal litigation in favor of parallel proceedings in state court, and the propriety of that stay was challenged on appeal. In analyzing the jurisdictional issue, the Supreme Court concluded that "a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata." 460 U.S. at 10. The Court held that the stay was therefore equivalent to a dismissal because the defendant was "effectively out of [federal] court." Id. at 10, 13.

We have previously held that the pertinent jurisdictional inquiry under Moses H. Cone is whether the district court has surrendered its jurisdiction to the state court such that the stay will have res judicata effect in subsequent litigation in state court. See Spring City Corp. v. Am. Buildings Co., 193 F.3d 165, 171 (3d Cir. 1999). If it has that effect, the order staying the federal litigation is final and appealable. Id.

Here, the issues raised in the Delaware litigation will be res judicata for purposes of the federal adjudication. The defendants in the state and federal suits are the same, and plaintiffs Walsey and McMurray are represented in the Delaware shareholder action.

Warner Br. at 6. Thus, a decision on the merits in state court will have a preclusive effect on the stayed federal case, putting the shareholders "effectively out of [federal] court." See Moses H. Cone, 460 U.S. at 10. The stay is therefore a final order that is reviewable under 1291.

## B. The Stay

The shareholders contend that the district court applied the wrong legal standard in granting the stay. They insist that the abstention that resulted from the district court's order is inconsistent with Colorado River and its progeny, and that the stay was, therefore, an abuse of discretion.

Colorado River involved the application of the McCarran Amendment, 43 U.S.C. 666, which waives the federal government's sovereign immunity in water rights cases and permits the United States to be joined in state suits involving those rights. The United States had filed suit in federal district court seeking a declaration of certain water rights. Shortly thereafter, one of the defendants in that declaratory action brought an action against the United States in state court in an effort to adjudicate both state and federal claims pursuant to the provisions of the McCarran Amendment. Several of the defendants in the federal action then attempted to dismiss the federal suit arguing that the federal court lacked jurisdiction under the McCarran Amendment. The district court never decided the jurisdictional issue, but did abstain in favor of the ongoing state actions. The Supreme Court granted certiorari in an appeal from that abstention "to consider whether the McCarran Amendment terminated jurisdiction of federal courts to adjudicate federal water rights and whether, if that jurisdiction was not terminated, the District Court's dismissal was nevertheless appropriate." Colorado River, 424 U.S. at 806.

The Supreme Court affirmed largely because of the federal policy reflected in the McCarran Amendment. "The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system. This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property." Id. at 819. The Court reasoned that the policy against

piecemeal litigation reflected Congress' assessment that state courts and state administrators had more expertise in adjudicating water rights than federal courts. See Moses H. Cone, 460 U.S. at 16.

The Court considered four factors in determining if abstention was warranted: 1) which forum first assumed jurisdiction over the property at issue, 2) the inconvenience of the federal forum, 3) the desirability of avoiding piecemeal litigation, and 4) the order in which jurisdiction was obtained in the concurrent forums. Colorado River, 424 U.S. at 818. In doing so, however, the Court stressed that "no one factor is necessarily determinative." Rather, the combination of these factors must be balanced against "the obligation to exercise jurisdiction . . .". Id. Once the balancing is completed, "[o]nly the clearest of justifications will warrant dismissal [in favor of the concurrent state litigation]." Id. at 818–19.

In Moses H. Cone, supra, the Court identified two additional factors that must be considered. These additional considerations require the trial court to weigh: which forum's law provides the rule of decision, and the adequacy of the state proceeding in protecting the parties' rights. Moses H. Cone, 460 U.S. at 23, 26.

Here, the district court correctly noted that Colorado River states that a court may abstain only in extremely limited circumstances. However, the court then proceeded to make a distinction between abstaining and granting a stay. See A–1, Letter Opinion dated October 26, 2000 at 2. The court concluded that our discussion of Colorado River in Ryan v. Johnson, 115 F.3d 193 (3d Cir. 1997) furnished the most recent pronouncement on the law of abstention. However, the court then relied upon several factors enunciated in Tabas v. Mullane, 608 F. Supp. 759, 763 (D.N.J. 1985) in holding that a stay was appropriate here even though it also held that abstention was not. See Letter Op. at 2.

Compared with other forms of abstention, like Pullman, where a court is required to dismiss the case, the Supreme Court expressly left open the question whether a federal court should dismiss or stay its proceedings when ordering abstention because of duplicative state court litigation. In Moses H. Cone, the Court stated:

> [w]e have no occasion . . . to decide whether a
> dismissal or stay should ordinarily be the preferred course of

> action when a district court properly finds that
> Colorado River counsels in favor of deferring to a parallel
> state-court suit.  We can say, however, that a stay is as much a
> refusal to exercise federal jurisdiction as a dismissal.  When a
> district court decides to dismiss or stay under Colorado River,
> it presumably concludes that the parallel state-court litigation
> will be an adequate vehicle for the complete and prompt
> resolution of the issues between the parties.

Moses H. Cone, 460 U.S. at 28.  Thus, the District Court erred in concluding that, by staying the case, it was not abstaining.  The stay that was entered is nothing more than the procedural mechanism for abstaining in favor of the concurrent state litigation. We reject any notion that Tabas could properly establish a separate test for abstention. The relevant inquiry must be guided by Colorado River and its progeny, not Tabas, or principles extrapolated from it.  We therefore reject any suggestion that Tabas furnishes an analytical framework for a stay distinct from Colorado River. It is well established in this Circuit that Colorado River governs motions to dismiss on grounds of abstention.  See, e.g., Ryan, 115 F.3d at 196 (applying Colorado River to the motion to dismiss); Ingersoll-Rand, Corp. v. Callison, 844 F.2d 133, 137 (3d Cir. 1988) (same); Western Auto Supply Co. v. Anderson, 610 F.2d 1126, 1127 (3d Cir. 1979) (same).  We have consistently emphasized the narrowness of Colorado River, and stressed that a federal court is usually statutorily obligated to exercise the jurisdiction that Congress has bestowed.  See Western Auto, 610 F.2d at 1127 (citing Colorado River and Calvert Fire as emphasizing a court's "unflagging obligation" to exercise jurisdiction); see Kentucky W. Virginia Gas Co. v. Penn. Public Utility Comm'n, 791 F.2d 1111, 1118 (3d Cir. 1986) (noting in dicta that the movant did not meet the Colorado River standards as there had been no showing of any congressional legislation evincing an intent to circumscribe the plaintiff's right to choose the federal forum). In Ryan, we reversed a district court's decision to abstain and dismiss an action in favor of state litigation largely because there was no clear congressional policy against piecemeal litigation that would have counseled in favor of abstention.  See Ryan, 115 F.3d at 199.  Ryan was a negligence suit involving state tort law.  We stated that "[t]he

presence of garden-variety state law issues has not, in this circuit, been considered
sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified
resolution in the state courts."  Id. at 198.  We also cautioned that if the presence of
concurrent litigation itself becomes the threshold test for meeting Colorado River's
piecemeal litigation factor, then "the test becomes so broad that it swallows up the
century-old principle . . . that the pendency of an action in the state court is no bar to
proceedings concerning the same matter in the Federal court having jurisdiction . . . ."
Id. (quoting Colorado River, 424 U.S. at 817) (internal quotations omitted).  That is
precisely the situation here.

We reaffirmed Ryan, supra, in Spring City Corp.  In Spring City, we concluded
that no "exceptional circumstances" warranted a stay.  Our decision focused in large part
upon the narrowness of the Colorado River doctrine as exemplified by its requirement of
a clear federal policy against piecemeal litigation. We again noted that such a policy is a
prime consideration in any attempt to overcome a federal court's obligation to exercise
jurisdiction.  See Spring City, 193 F.3d at 172.  We also explicitly stated that "Ryan
represents the applicable law under Third Circuit and Supreme Court precedent"
regarding abstention.  Id.

We perceive no distinction between the circumstances here, and the circumstances
that were insufficient to justify abstention in Ryan.  In fact, only the fourth Colorado
River factor--the order in which jurisdiction was obtained--weighs in favor of abstention
here.  That factor does not turn upon "which complaint is filed first, but rather [on]. . .
how much progress has been made in the two actions."  Moses H. Cone, 460 U.S. at 21.
We are advised without contradiction that

> the Delaware Litigation proceeded on an expedited schedule.
> . . . [T]he plaintiffs in the Delaware Litigation moved with
> expedition. Court conferences were held; voluminous
> documents were requested and produced; interrogatories
> propounded, objected to and answered; and some twenty
> depositions were taken. The Court of Chancery ruled upon
> multiple discovery and scheduling issues. Indeed, discovery
> in the Delaware Litigation is largely, if not altogether,
> complete.

Warner Br. at 7. This does not weigh heavily in the balance however, given our consideration of all of the other Colorado River/Moses H. Cone factors and the absence of a federal policy against piecemeal litigation that was so important to our inquiry in Ryan.

There has been no assumption of jurisdiction over property here so that is not relevant to our analysis. The federal district court is situated in Newark, New Jersey. That forum is not inconvenient as both Warner and AHP have their principle place of business in New Jersey.  Moreover, New Jersey and Delaware are neighboring states.  Even if we were to assume that the participants must travel to New Jersey from the most distant part of Delaware, we would be hard put to define the resultant travel as imposing such a hardship that a federal court in New Jersey would be inconvenient for purposes of Colorado River. In addition, there is no credible allegation that this litigation involves anything more than garden-variety state corporate law issues.

Appellees seize upon the fact that the issues here are controlled by Delaware law, and they remind us of the expertise of Delaware courts in resolving issues of corporate law and shareholders' rights.  We share the appellees' high regard for the courts and jurists of Delaware, and we are well aware of the unique stature of corporate law in Delaware.  However, that is not a sufficient reason for a federal court to refrain from exercising its jurisdiction.

Moreover, "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law."  Ryan, 115 F.3d at 199; see also Spring City, 193 F.3d at 172.  Furthermore, application of state law is not as important where, as here, the federal forum is adequate to protect the parties' rights. It is a far more important consideration when the state court is an inadequate forum to protect the rights of the litigants.  See Ryan, 115 F.3d at 200; Spring City, 193 F.3d at 172.

Given the parameters of Colorado River and Ryan, it is clear that the district court abused its discretion in staying this litigation.  It is ironic that the district court explained the "alternative" relief here by stating: "[a]bstention would be an extreme and

inappropriate response.  But a stay meets the proper concerns raised by the defendants, and the motion for that relief is granted." A-3.  However, as we stated above, here there is no distinction between abstaining from adjudicating the federal litigation on the one hand, and staying it on the other.  We therefore hold that the district court abused its discretion by entering the stay.

### III.  CONCLUSION

For the reasons set forth above, we will vacate the district court's order and remand for further proceedings on the merits.


TO THE COURT:
     Please file the foregoing opinion.
                                                              By the Court,



CIRCUIT JUDGE

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-1346


RUSSELL W. MCMURRAY, JR., on behalf of himself and all others
similarly situated

v.

LODWEIJK J.R. DE VINK; ROBERT N. BURT; DONALD C. CLARK; JOHN A.
GEORGES; WILLIAM H. GRAY, III; WILLIAM R. HOWELL; LASALLE D.
LEFFALL, JR.; GEORGE A. LORCH; ALEX J. MANDL; MICHAEL I. SOVERN;
WARNER-LAMBERT CO.; AMERICAN HOME PRODUCTS CORP.

(D. C. N. J. No. 99-cv-05253)


ELLIOT WALSEY, derivatively on behalf of himself and all others
similarly situated

v.

LODEWEIJK J.R. DE VINK; ROBERT N. BURT; DONALD C. CLARK; JOHN A.
GEORGES; WILLIAM H. GRAY, III; WILLIAM R. HOWELL; LASALLE D.
LEFFALL, JR.; GEORGE A. LORCH; ALEX J. MANDL; MICHAEL I. SOVERN;
AMERICAN HOME PRODUCTS CORP.; WARNER LAMBERT CO.

(D. C. N. J. No. 99-cv-5499)


Elliot Walsey and Russell W. McMurray, Jr.,
Appellants


Appeal from the Judgment of the District Court
of the District of New Jersey
District Judge: Hon. Katharine Sweeney Hayden


Argued: November 7, 2001

Before: BECKER, Chief Judge, McKEE and RENDELL, Circuit Judges

JUDGMENT

    This cause came to be considered on appeal from the United States
District Court
for the District of New Jersey, and was argued on November 7, 2001.
    On consideration whereof, it is now ORDERED AND ADJUDGED by this
Court

that the order of the stay entered by the District Court is hereby vacated, and the matter is
remanded to that court for further proceedings consistent with the attached opinion.

ATTEST:

CLERK


DATED January 3, 2002