In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-1428

GERALD HILL,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cv-00307-JPG-PMF — **J. Phil Gilbert**, *Judge.*

SUBMITTED JULY 9, 2014 — DECIDED AUGUST 11, 2014

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff was a federal prisoner serving a 60-month sentence for possession of a gun in furtherance of drug trafficking when he was attacked by a fellow prisoner wielding a metal object of some sort. The attack destroyed the vision in one of the plaintiff's eyes (as a result of which the eye had to be removed) and seriously impaired the vision in the other. It appears that as a result he is blind or nearly so. While still in prison he filed pro se a timely suit

against the United States under the Federal Tort Claims Act. He contended that he would not have been attacked had it not been for the Bureau of Prisons' negligently allowing the prison in which he was held (the Federal Correctional Institute at Greenville, Illinois) to become overcrowded, and negligently failing to protect inmates from violence by other inmates that was made more likely by the overcrowding. *Hill v. United States*, No. 3:11-cv-00317-MJR (S.D. Ill. Apr. 18, 2011).

While the plaintiff's suit was pending, he was released from prison to a halfway house and instructed to keep the court informed of any future change of address. He was evicted (we have not been told why) from the halfway house and failed to notify the court of his new address. As a result, the district court dismissed his suit for failure to prosecute it. The dismissal was without prejudice—but the six-month statute of limitations from the date of the final denial of his administrative claim for relief, see 28 U.S.C. § 2401(b), had run.

The plaintiff obtained counsel, who moved to set aside the dismissal. In support of the motion the plaintiff stated that his failure to have advised the court of his change of address after leaving the halfway house "was not intentional nor was it meant to vex the government or unduly delay the courses [*sic*] of my case. Life for me now is a major struggle and I have been greatly distracted by my ongoing problems as an ex-convict." That sounds rather persuasive, given his greatly impaired vision. But the judge denied the motion, and the plaintiff did not appeal the denial.

Six months later, represented by the same lawyer, the plaintiff filed a materially identical suit. The six-month stat-

ute of limitations had expired some 19 months earlier, but he argued that its running should be equitably tolled; we have held that the statute of limitations for suits under the Federal Tort Claims Act can be equitably tolled. *Arteaga v. United States*, 711 F.3d 828, 833 (7th Cir. 2013). The district court rejected the argument and dismissed the suit, precipitating this appeal. The judge reasoned that the plaintiff had failed to exercise "due diligence," a failure generally fatal to a plea for equitable tolling. E.g., *Norman v. United States*, 467 F.3d 773, 775–76 (D.C. Cir. 2006). The plaintiff, he said, "was able to file [his first] complaint *pro se* while incarcerated … and was able to submit a change of address to the court [the change of address he had submitted had been the change from the address of the prison to the address of the halfway house]. Upon release, tasks such as changing his address with the Court and retaining an attorney should have become less onerous." The government describes the plaintiff's delay in filing his second suit as "delinquency."

The district judge's explanation for refusing to allow the late filing of the suit was cursory. He did not suggest (nor does the government) that the government had been prejudiced by the plaintiff's delay in suing. And upon being released from prison the plaintiff was likely to have found it more rather than, as the district judge said, less difficult to advise the court of changes of address. As a prisoner the plaintiff could ask a fellow prisoner or a member of the prison staff to mail a letter for him; upon release he was a blind ex-con struggling to keep his head above water, and the struggle must have intensified when he was expelled, allegedly without notice and for reasons unexplained in the papers in this case, from the halfway house that was his first home after he completed his prison sentence. There is no in-

dication in the record that he had a family to help him cope with the difficult situation in which he found himself.

But then there is the inexplicable delay in the filing of the second suit. The plaintiff must have obtained his lawyer very shortly after the dismissal of the first suit, for it was only two weeks after that dismissal that the lawyer filed a motion to set it aside. But when the motion was denied, instead of appealing the lawyer waited more than six months to file a new suit.

The lawyer's dawdling demonstrates a lack of diligence for which he offers no excuse—his brief says nothing about the delay. And ordinarily the deficiencies of a lawyer are imputed to the client. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396–97 (1993); *Farzana K. v. Indiana Department of Education*, 473 F.3d 703, 705-06 (7th Cir. 2007). What makes this case unusual is that in dismissing the second suit the district judge, while mentioning briefly (and with appropriate disapproval) the delay in the filing of that suit, did not suggest that that delay was sufficient in itself to warrant denial of equitable tolling. He focused instead on the plaintiff's failure to have notified the court of his change of address after his expulsion from the halfway house. The judge gave no weight to what may well have been the plaintiff's desperate circumstances when he found himself on his own after that sudden expulsion.

Ordinarily as we said the pratfalls of a party's lawyer are imputed to the party. But given the unusual gravity of the plaintiff's injuries, the absence of any suggestion of prejudice to the defendant from the delay in suing, and the district judge's cursory treatment of the issue of equitable tolling, we have decided that the judgment should be vacated and the

case remanded to the district court for further consideration of the tolling issue. We do not prejudge the issue; we merely think it deserves fuller consideration.

We note in closing a curious wrinkle in the district court's handling of the case. The plaintiff's first suit, which was materially identical to his second, current suit, was as we said dismissed without prejudice for failure to prosecute. Rule 41(b) of the civil rules provides that a dismissal for failure to prosecute is with prejudice "unless the dismissal order states otherwise." In other words, dismissal for failure to prosecute is presumptively with prejudice, as we pointed out in *Lucien v. Breweur*, 9 F.3d 26, 29 (7th Cir. 1993). Citing that decision, the magistrate judge to whom Judge Reagan (the district judge in our plaintiff's first case) had referred the motion recommended dismissal of the first suit with prejudice. Had Judge Reagan followed that recommendation, the second suit would be barred by res judicata. The judge, however, dismissed the suit before him—the first of the plaintiff's two suits—without prejudice, but also without giving any reason for rejecting the Rule 41(b) presumption. The government accepted that form of dismissal despite the absence of a stated reason, remarking in a footnote in its brief to us that "even though this suit is essentially the same as Hill's first suit, it is not foreclosed by operation of the doctrine of res judicata, because the dismissal of Hill's first suit was without prejudice." Judge Reagan may or may not have had a good reason to make that dismissal without prejudice, but in light of the government's acceptance of that determination (an acceptance for which the government may, for all we know, have a good reason as well, though we can't think of any), we are not disposed to pursue the issue; the defense of res judicata has been waived.

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.