> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 16, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3548

| | |
|---|---|
| RICKEY J. HARRIS III, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 18-C-813 |
| ANTHONY EMANUELE and MICHAEL ZETTING, *Defendants-Appellees*. | William C. Griesbach, *Judge*. |

**O R D E R**

This is an appeal from a district court's discretionary refusal to reopen a case. In 2018, Rickey Harris sued officers who had allegedly strip-searched him. During discovery, counsel for the defendants tried unsuccessfully to locate Harris, who had not updated his address, as the district court had three times ordered him to do or risk dismissal. The court later dismissed Harris's suit sua sponte for failure to prosecute and

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

comply with those orders. Seven months later, Harris unsuccessfully moved to vacate that judgment. He argued that a fire at his home ten months earlier had prevented him from receiving mail there. But the district court permissibly decided that Harris had not adequately explained his failure to update his address after the fire, so we affirm.

After Harris filed this suit under 42 U.S.C. § 1983 in May 2018, the district court issued several orders. First, within the first four months, it twice screened the complaint. *See* 28 U.S.C. § 1915A(a). In the two screening orders, the court warned Harris that he must notify the court of any change of address and that failing to do so could result in dismissal for failure to prosecute. In November, the court ordered the parties to complete discovery in ninety days (by February 2019). The scheduling order reiterated that the plaintiff must provide his current address or risk dismissal.

The district court eventually dismissed the case. Near the end of discovery, the defendants moved to extend it, stating that for three weeks defense counsel had been unable to locate Harris to serve him with discovery. They explained that mail sent to Harris's address on file at the court was returned undeliverable, public databases had yielded no new address, and Harris had not served any discovery with a return address. The defendants also asked the court to order Harris to update his address, adding that if he failed to do so, then it could dismiss the case for failure to prosecute. A few days later, the court dismissed the case for failure to prosecute and comply with court orders. *See* FED. R. CIV. P. 41(b). It pointed out that it had previously ordered Harris to notify it of any change in his address and warned him that it could dismiss his case if he failed to do so, yet Harris had nonetheless failed to comply. The clerk mailed a copy of the dismissal order to Harris's address on file, but it was returned as undeliverable.

Seven months after dismissal, Harris unsuccessfully asked the court to reopen his case. In a three-sentence letter, he asserted that after late-December 2018 he "was unable to receive any mail at the last current address on record due to a crisis at that location all [his] belongings were damaged due to a fire." The court construed this letter as a motion to vacate the judgment under FED. RULE CIV. P. 60(b) and set a briefing schedule for a response and reply. The clerk mailed the briefing schedule to Harris, but the mail was again returned undeliverable because Harris had yet to update his address; he did so seven weeks after moving to reopen. The defendants responded that reopening the case was not justified. They argued that, while the fire may have prevented Harris from receiving mail at his old address, it did not prevent him from giving a new address. And, they added, reopening the case would prejudice them

because one of the officers named in the complaint no longer works at the jail and might be difficult to locate. Harris did not reply. The district court denied the motion to vacate, finding that Harris had not shown that his omissions were due to "excusable neglect." *See* FED. R. CIV. P. 60(b)(1).

On appeal, Harris contends that the district court should have reinstated his case. He views his failure to update his address timely as excusable neglect arising from the extraordinary, uncontrollable fire at his home. Two parts of Rule 60(b) might apply: First, Rule 60(b)(1) applies if the moving party has shown "excusable neglect." Whether an omission is "excusable" under Rule 60(b)(1) depends on "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Second, Rule 60(b)(6) covers "any other reason that justifies relief." This catch-all provision applies only in "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). A refusal to grant Rule 60(b) relief is reviewed under an "extremely deferential" abuse-of-discretion standard. *Eskridge v. Cook Cty.*, 577 F.3d 806, 809 (7th Cir. 2009) (quoting *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004)).

We accept that the fire that damaged Harris's belongings was an extraordinary event, but for three reasons the district court nonetheless did not abuse its discretion in declining to reopen the case. First, Harris gave the district court no reason why he could not have updated his address after the fire. We take him at his word that, because of the fire in December, he could not receive the discovery requests or the dismissal order at his address on file. But Harris had received the three earlier orders from the court requiring that, if his address on file was no longer valid, he had to notify the court. And he did not. We may also assume (although Harris did not say so to the district court) that shortly after the fire he needed to attend to matters reasonably more urgent than the orders to update his address, so a brief delay in updating his address would have been excusable. But Harris gave the court no reason for waiting nine months after the fire to tell it about the fire—and then another seven weeks to update his address.

Harris responds—for the first time on appeal—that he was homeless after the fire and had no address to provide. He did not include this information in his motion to reopen, and, as we mentioned, he never replied to the defendants' opposition to that motion. Because he never asserted these facts to the district court, we may not consider

them on appeal. *See Hernandez v. HCH Miller Park Joint Venture*, 418 F.3d 732, 736 (7th Cir. 2005). In any case, even if Harris had no new mailing address after the fire, he should have told the court that his old address was no longer valid. But he did not.

Second, Harris's inability to receive mail did not relieve him of his obligation to monitor the court's docket and thereby respond promptly to the dismissal of his case. *See Shaffer v. Lashbrook*, 962 F.3d 313, 317 (7th Cir. 2020) (failure to check docket for over six months is not excusable neglect, despite inability to receive mail). By occasionally contacting the court to check the docket after the fire, he could have learned of the dismissal and moved to reopen the case sooner. But he gave the court no reason why fire damage to his belongings stopped him from checking the docket for seven months.

Third, the district court could reasonably have decided that refusing to vacate its sanction of dismissal was proper because lesser sanctions would have been ineffective. We urge courts to consider imposing lesser sanctions before dismissing a case for failure to prosecute. *See Johnson v. Chicago Bd. of Educ.*, 718 F.3d 731, 733 (7th Cir. 2013). But here the district court could permissibly conclude that warnings and fines were futile. After all, Harris did not just fail to notify the court promptly after the fire about the invalidity of his address, despite orders to do so. Even the dismissal itself did not elicit swift compliance, for Harris delayed seven more weeks *after* learning of the dismissal and moving to reopen before he told the court that his old address was invalid. Fines would also not remedy possible harm to defendants or the court because Harris is indigent, as he could not prepay the filing fee. *See Donelson v. Hardy*, 931 F.3d 565, 569–70 (7th Cir. 2019) (where warnings and fines are ineffective, dismissal is a permissible sanction).

We end by emphasizing the limited scope of our review. We are not reviewing the validity of the underlying dismissal for a failure to prosecute. Such dismissals are warranted "only in extreme situations, where there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Dunphy v. McKee*, 134 F.3d 1297, 1299–1300 (7th Cir. 1998) (quoting *In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995)). And we discourage sua sponte dismissals for failure to prosecute unless the court has warned the plaintiff that the objectionable conduct, if unabated, will result in dismissal. *Ball v. City of Chicago*, 2 F.3d 752, 755–56 (7th Cir 1993). (The warning need not be "formalized in a rule to show cause" but should be more individualized than generic orders for all litigants. *See id.*) But Harris did not appeal the underlying dismissal, as he might have done had he monitored the docket. So we do not apply the norms that would govern a direct appeal and do not decide

whether the underlying dismissal was proper. As we have explained, under our extremely deferential review of post-judgment motions, Harris did not explain his failure to update the court in a way that required it to reinstate Harris's case.

AFFIRMED